1

2 **UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
3 **PIKEVILLE DIVISION**

4

5 David Mounts                                   )
Bonnie Mounts,                                 )
6 on behalf of themselves and all similarly     )   Case No.
situated persons                               )
7      Plaintiffs,                              )
                                               )   Judge
8      vs.                                      )
                                               )   Mag. Judge
9                                              )
Bruce Walters Ford Sales, Inc.                 )   <u>Class Action Complaint to Impose Civil</u>
10 c/o E. Bruce Walters, registered agent for    )   <u>Liability Under the Ky Consumer Protection</u>
service of process                             )   <u>Act, the federal Truth in Lending Act, Jury</u>
11 302 South Mayo Trail                          )   <u>Demand; Statutory, Actual & Punitive</u>
Pikeville, Ky. 41501                           )   <u>Damages; Attorney Fees</u>
12                                             )
and                                            )
13                                             )
Credit Acceptance Corporation                  )
14 c/o Corporation Service Co.                   )
421 West Main St.                              )
15 Frankfort, Ky. 40601                          )
                                               )
16                                             )

17

18                          **INTRODUCTION**

19      1.   Named Plaintiffs, David Mounts and Bonnie Mounts, bring this suit involving

20 significant allegations of unlawful conduct on the part of the Defendants, Bruce Walters Ford

21 Sales, Inc. [hereinafter "Walters"] and Credit Acceptance Corp,[hereinafter "CAC"[ [collectively

22 "Defendants"] in connection with a consumer transactions involving the sale and financing of

23 motor vehicles. The claims alleged herein consist of both class and individual claims.

24      More specifically, Defendants Walters and CAC, act in concert to both sell and to finance

25 motor vehicles using a process devised and created by CAC. This "process" or "system" involves

26 documentation provided to Walters by CAC and as well as the training in the use of same in

27 connection with the sale and financing of motor vehicles. In Plaintiffs' and all other transactions

28 ˇ 1 ˇ

1   involving both Defendants, Walters initially acts as both the seller and creditor who executes retail

2   installment sale contracts [hereinafter "RISCs"] with each buyer and then sells or assigns each Risc

3   to CAC through a prearranged process or agreement. In such transactions CAC requires that all

4   documentation, including the Risc, be electronically signed by each buyer as part of this process.

5   Each of these described transactions must comply with the federal E-Sign Act, 15 U.S.C. §7001, et

6   seq. and Ky's version of the Uniform Electronic Transactions Act (UETA) K.R.S. §369.101, et

7   seq. In order to use an electronic signature both of these statutes require the consent of the

8   consumer be first obtained and, most importantly, full disclosure of the consequences, rights,

9   duties and obligations involving the use of an electronic signature to consummate each of these

10  transactions. As alleged and described herein Defendant Walters does not fully disclose all of this

11  information to consumers or follow the process required by these statutes. The allegations herein

12  specifically apply to the sale and financing of GAP to its customers where it is alleged herein that

13  consent was not properly obtained. When assigned to CAC, these defects are apparent on the face

14  of the documents it receives from Walters.

15      Additionally, in connection with each transaction Defendant Walters, in each of its car

16  sales, whether in cash or whether financed, assesses every consumer a "processing fee" of $799.

17  Named plaintiffs do not challenge the right of Walters to charge a processing fee. Named

18  Plaintiffs, however, challenge the $799 fee as being unfair and unreasonable and, therefore,

19  unconscionable in violation of Ky's Consumer Protection Act as an amount which far exceeds

20  what other reputable dealerships charge for the same services and which is an amount which can't

21  be justified by any of the services which Walters claims it performs for consumers in connection

22  with each sale. As such this fee is nothing more than additional cost and profit that Walters builds

23  into each transaction which violates the Ky Consumer Protection Act.

24      Further, in connection with many of these same sales which Walters finances it sells GAP

25  which is a debt cancellation product which provides for cancellation of all or part of an obligation

26  of the buyer or obligor upon the occurrence of certain specified events. The product purports to

27

28

1    protect the consumer under limited circumstances where a vehicle is damaged or destroyed as a

2    result of circumstances beyond the control of or is unforeseen by the consumer such as fire, theft

3    and collision involving the collateral. The GAP product is supposed to pay the difference between

4    the value of the vehicle at the time of the event and the amount of the note for which the consumer

5    is obligated to pay at the time. Walters sold this product to the Named Plaintiffs at the cost of

6    $976.00. This same GAP coverage is readily available and is easily obtained by any consumer

7    from his or her own insurance agent for a fraction of the cost charged by Walters. For its sale of the

8    GAP product Walters receives a significant commission which it retains as concealed profit in the

9    deal which is an additional unconscionable cost to the consumer.

10        Further, GAP is not required to be purchased by the consumer in order to obtain the credit

11    sought. To that end the seller, Walters, is required to inform each consumer of that fact and to

12    obtain his or her signed written consent to purchase the GAP product. Walters, in using Named

13    Plaintiffs' and others electronic signature to obtain such consent failed to comply with the federal

14    E-sign statute and Ky's UETA version of that statute and, therefore, did not properly obtain Named

15    Plaintiffs' consent as required under the statute. Consequently, Walters violated the federal

16    truth-in-lending act where, absent proper consent, the cost of the GAP product was required to be

17    disclosed as part of the finance charge when, instead, it was included in the amount financed.

18    Therefore, several of Walters' required material credit disclosures were inaccurate in violation of

19    the federal truth-in-lending act.

20        Plaintiffs plead additional individual claims herein under the Ky's Consumer Protection

21    Act, the Uniform Commercial Code and at common law.

22

23

24

25

26

27

28

1

2

3 **JURISDICTION AND VENUE**

4    2.   This Court has jurisdiction under the federal Truth-in-Lending Act, 15 U.S.C. §1640(e)

5 and 28 U.S.C. §§ 1331 and 1337.

6       Further, the Court may exercise its supplemental jurisdiction of all state law claims pled

7 herein by virtue of its constitutional authority under Article III and 28 U.S.C. 1367 in that

8 Plaintiffs' state law claims are so related to their federal claims that they form part of the same case

9 or controversy. Venue is proper because the events that took place occurred entirely in this

10 Division.

11       Additionally, jurisdiction is invoked pursuant to 28 U.S.C. §1332 as the Plaintiffs and each

12 of the Defendants referenced herein are citizens of different states and the amount in controversy

13 exceeds the appropriate jurisdictional amount.

14 **PARTIES**

15    3.   Named Plaintiffs, David Mounts ("David") and Bonnie Mounts ("Bonnie"), mother

16 and son, are individual consumers who reside in the state of West Virginia, Mingo County, are

17 "consumers" as defined in TILA, 15 U.S.C. §1602(i), "persons" as defined in both the Ky Motor

18 Vehicle Sales Act, KRS 190.010(2) and in the Ky Consumer Protection Act, KRS §367.110(1),

19 "retail buyers" as defined in the Ky Installment Sales Act, KRS §371.210(4).

20    4.   Defendant, Bruce Walters Ford Sales, Inc. [hereinafter "Walters" or "Defendant"] is a

21 domestic corporation and a creditor as it is defined in TILA, 15 U.S.C. §1602(g) who, in the

22 ordinary course of business, extends or arranges for the extension of credit, a "motor vehicle

23 dealer" as the term is defined in the Ky Motor Vehicle Sales Act, KRS §190.010(2), a "retail seller"

24 as the term is defined in the Ky Installment Sales Act, KRS §371.210(5) engaged in the business of

25 selling, offering to sell, soliciting, or advertising the same, of new or used vehicles, or possessing

26 motor vehicle for purposes of resale, either on its own account, or on behalf of another, either as its

27

28

1  primary business or incidental thereto, doing business in Pike County, Ky. and a "person" as the

2  term is defined in the Ky Consumer Protection Act (KCPA) at KRS §367.110 and a creditor as

3  defined in the at KRS §367.610(3).

4      5. Defendant, Credit Acceptance Corp. [hereinafter "CAC" or "Defendant"] is a

5  corporation transacting business principally from 25505 W. Twelve Mile Rd., Southfield,

6  Michigan, whose business it is to purchase and/or accept for assignment, retail installment sales

7  obligations or contracts as they are defined in the Ky Retail Installment Sales Act, KRS

8  §371.210(7). It, by virtue of contract, has agreed to be subject to all claims and defenses which

9  may be asserted by the Plaintiffs against Walters.

10

11                    **SPECIFIC FACTUAL ALLEGATIONS**

12      6. In early to mid-July, 2019 Named Plaintiff, David Mounts [hereinafter "David"]

13  decided that he wanted to purchase a new vehicle for his mother, Named Plaintiff, Bonnie Mounts

14  ["hereinafter "Bonnie"]. Based on a recommendation of a friend, David sent a message to

15  salesman, Josh Harvey [Harvey"], expressing interest in purchasing a vehicle. Thereafter, on July

16  13, 2019 Plaintiffs drove from West Virginia to Walters with the intent to purchase and finance a

17  new motor vehicle.

18      7. When Named Plaintiffs arrived they were greeted by Harvey and, after some small talk,

19  Harvey asked what they "were trying to do." David responded that they had $1700 to put down on

20  a new vehicle and that they liked the Mitsubishi Outlander and the Eclipse Cross. When asked

21  about their credit David confessed that it was not very good. Harvey then suggested that they

22  confine their search to a used vehicle because he wasn't going to be able to get Named Plaintiffs

23  financed for new vehicle. Instead, in spite of Named Plaintiffs' request, Harvey mentioned that he

24  had a 2016 Chevy Malibu available. While Named Plaintiffs initially expressed little interest,

25  Harvey kept insisting that they look at it all the while describing it as a wonderful vehicle. Bonnie

26  told David that it wouldn't hurt to look and Harvey brought the vehicle around.

27

28                          ˘ 5 ˘

8. Named Plaintiffs then took the vehicle for a test drive and, afterwards, expressed interest in buying the vehicle. Harvey told Named Plaintiffs that the purchase and financing would require a down payment from them of $1700.

9. Named Plaintiffs were then directed to another location at Walters to execute the paperwork where they were introduced to George Hadly [hereinafter Hadly"], Walters' finance & insurance ("f & i) person." Hadly led the named Plaintiffs into a small dimly lit room where he sat behind a desk with named Plaintiffs sitting directly in front of him. On Hadly's desk there was a computer monitor which sat on the side which was tilted at a slight angle toward the Named Plaintiffs but not sufficiently in order for them to clearly make out what was on the screen.

10. At that point Hadly announced that he was going to conduct the signing of the paperwork in two stages. The first stage would be conducted manually while the second would be electronically. In the 1st stage, according to Hadly, there would be a discussion concerning the components that went into the cost of the vehicle. That consisted of placing a "retail buyers order" in front of Named Plaintiffs far enough away from them where they couldn't read it. That specific document indicated a fee of $799 which was not given a name but generally described as for "customer services" and further designated as a "processing fee" on the Risc. That cost was later included in the cash price of the vehicle and the amount financed.

11. The retail buyers order further included the cost of GAP, a debt cancellation product, in the amount of $976. Hadly, even before inquiring whether Named Plaintiffs wished to purchase this product, stated that he had "already included its cost" in the amount financed " because it only changes your [Named Plaintiffs] monthly payment a few dollars." This cost was also included in the cash price of the vehicle and the amount financed.

12. The second stage announced by Hadly was to be conducted electronically which involved the execution of the remaining financing documents by the Named Plaintiffs using their electronic signature. Hadly then placed a stack of paper documents in front of him and generally described each one to the Named Plaintiffs, placing a mouse over each location requiring Named

1    Plaintiffs' signature and then signing them himself on behalf of the Named Plaintiffs without

2    allowing them to read or review.

3         13. This electronic process required the consent of the Named Plaintiffs along with certain

4    disclosures made to them concerning their rights and obligations thereunder at the time and

5    thereafter surrounding the utilization of their electronic signatures to transact these electronic

6    documents. Only **after** Hadly signed all of the documents for the Named Plaintiffs did he printout

7    a document entitled "Declaration Acknowledging Electronic Signature Process" and request the

8    Named Plaintiffs to sign it using their actual handwritten signatures supposedly representing

9    consent to having used their electronic signatures for the execution of each of the finance

10   documents

11        14. Critically, this "Declaration," used supposedly to gain the consent of the Named

12   Plaintiffs to utilize their electronic signature, was abbreviated and did not contain all the disclosure

13   required by law.

14                              CLASS ACTION CLAIMS

15

16                              **CLAIM ONE**
                                **[TILA]**

17

18        15. This is a class action claim made pursuant to the federal truth-in-lending act, 15 U.S.C.

19   §1601, et seq. [hereinafter referred to as the "Act"] and Rule 23, Fed. R. Civ. P., against both

20   Defendants named in this action.

21        16. Named Plaintiffs incorporate each and every factual allegation contained in paras 6-14

22   as if fully rewritten herein.

23        17. Named Plaintiffs are "consumers" as defined in 15 U.S.C. §1602(h) who were subjects

24   of a transaction which was primarily for personal, family or household purposes.

25        18. Defendants are creditors as defined in the Act at 15 U.S.C. §1602(f) in that each

26   Defendant regularly extends credit in connection with a consumer credit transaction which is

27

28                              ˘ 7 ˘

1    payable by agreement in more than four installments or for which the payment of a finance charge

2    is or may be required.

3       19. The parties referenced herein entered into a closed end consumer transaction in the

4    form of a credit sale as it is defined herein at 15 U.S.C. §1602(g) for the sale and financing of a

5    2016 Chevrolet Malibu [hereinafter the "vehicle"].

6       20. In connection with that transaction certain material credit disclosures were required to

7    be made to Named Plaintiffs specified in 15 U.S.C. §1638(a). Among which were the "amount

8    financed", the "finance charge" and the "annual percentage rate (APR)".

9       21. In connection with this sale Defendant Walters sold Named Plaintiffs a product known

10    as GAP for the amount of $976. Walters included the cost of GAP in the amount financed upon

11    which finance charge and other charges were calculated .

12       22. GAP is not required to be purchased in order to obtain credit which must be disclosed

13    and written consent must be obtained from any consumer for its purchase. Unless this disclosure is

14    made and consent is obtained, the cost of GAP can't be included in the amount financed but must

15    be included in the finance charge.

16       23. Named Plaintiffs' written consent was purportedly obtained through their electronic

17    signatures on a form provided by Defendants.

18       24. As described hereinabove, the manner in which the written consent of Named Plaintiffs

19    was obtained in order to use their electronic signature was not in accordance with the law and,

20    therefore, it could not have been effective in order to form a knowing and voluntary consent.

21       25. Specifically, the federal E-sign Act, 15 U.S.C. §7001, et seq. and K.R.S. §369.101, et

22    seq. (UETA) setup specific procedures that must be followed for an electronic signature to be

23    effective including, among other things, obtaining the consent of the Named Plaintiffs to use the

24    electronic signature procedure.

25

26

27

28

1       26. Defendants, in every way possible, failed to properly use those procedures and,

2    therefore, the electronic signatures of the Named Plaintiffs consenting to the purchase of GAP

3    could not have possibly been effective and could not have constituted consent.

4       27. Consequently, Walters inclusion of the cost of GAP in the disclosure of the amount

5    financed made to the Named Plaintiffs was inaccurate because it belonged in the finance charge

6    making the disclosure of the amount financed inaccurate in violation 15 U.S.C. §1638(a)(2)(A) as

7    well as the finance charge under 15 U.S.C. §1638(a)(3) and the APR under 15 U.S.C. §1638(a)(4).

8       28. Immediately thereafter, Walters assigned and/or sold this transaction to CAC through a

9    prearranged agreement using documents provided to it by CAC as well as a process designed by

10   CAC.

11      29. Under the Act the GAP charge is part of a finance charge unless an exemption is met,

12   and since the documents assigned to CAC do not show that there was an exemption, they show a

13   violation. Furthermore, the documents assigned must affirmatively show compliance with Reg Z.,

14   12 cfr §1026.4(d)(3).   Under 15 USC. §1641, the face of the documents assigned clearly show that

15   E-Sign had not been complied with, therefore, the documents do not show the consumer consented

16   to the purchase after receiving the required written disclosures about it, and absent such proof, the

17   GAP charge is presumptively a finance charge.

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4                    **<u>Class Action Allegations</u>**

5        30. Named Plaintiffs bring this claim on behalf of a class of consumer consisting of all

6 persons who:

7        (a) Purchased and financed the sale of an auto (new or used) from Defendant Walters

8        through the use of a retail installment sales contract or through other instrument of
       indebtedness;

9

10        (b) In connection with each sale purchased GAP coverage;

11        (c) Where the consent to the purchase of GAP was obtained from the consumer through
       the use of an electronic signature process;

12

13        (d) Where the process of obtaining consent to purchase was defective as a result of
       the failure to fully disclose all information required for the consent to use of electronic
       signature process pursuant to 15 U.S.C. 7001, et seq.;

14

15        (e) Where in each case the cost of GAP was included in the amount financed or in the
       cash price of the vehicle and not in the finance charge; and,

16

17        (f) Where in each case the transaction was purchased and/or assigned to the Defendant
       CAC.

18        31. The Class so defined is limited to those consumers defined above on or after a date

19 which is one year before the filing of this lawsuit.

20        32. The class represented by Named Plaintiffs in this action, of which they are themselves

21 members, is so numerous that joinder of individual members is impracticable, since Defendants

22 finance many vehicles in the manner described.

23        33. The action presents common questions of law and fact under the Truth in Lending Act,

24 including but not limited to (a) the compliance of Defendant's electronic signature procedures with

25 the federal statute, that relate to and affect the rights of each member of the class. Also, the relief

26 sought is common to the entire class.

27

28

1      34. The claims of Named Plaintiffs are typical of the claims of the class, in that the claims

2   of all members of the class depend on a showing of the same acts and omissions of Defendants

3   which give rise to the rights of the class to the relief sought herein.

4      35. There is no known conflict between either Named Plaintiff and other members of the

5   class with respect to this action, or with respect to the claims for relief herein set forth.

6      36. Named Plaintiffs are representative parties for the class and are able to, and will, fairly

7   and adequately protect the interests of the class.

8      37. The attorney for Named Plaintiffs is experienced and capable in litigation in the field of

9   consumer rights and has successfully represented claimants in similar litigation, including cases

10  that have been concluded with trial and without trial.

11     38. This action is properly maintained as a class action in that the prosecution of separate

12  actions by individual class members would create the risk of individual inconsistent adjudications

13  which would, as a practical matter, be dispositive of the interests of the other members not parties

14  to the adjudication, or would substantially impair or impede their ability to protect their interests.

15     39. The identity of each individual member of the class can be ascertained from the books

16  and records maintained by Defendants, and the appearance of the Named Plaintiffs will fairly

17  ensure the adequate representation of all members of the class and protect their interests.

18     40. Because many of the persons with whom Defendants have dealt, or who were affected

19  by their activities, may not be aware of their rights, or are not in a financial position to assert such

20  rights readily, and because relegation of their claims to individual actions would result in a

21  unreasonable multiplicity of suits and a corresponding burden on this and other courts, a class

22  action is superior to all other methods for a fair and efficient adjudication of this controversy.

23

24

25

26

27

28

1

2

3

4

5

6

**CLAIM TWO**
**[The KENTUCKY CONSUMER PROTECTION ACT]**

7      41. This is a class action claim made pursuant to the Ky Consumer Protection Act, K.R.S.

8   §367.110, et seq. [hereinafter referred to as the "Act"].

9      42. This claim is made solely against Defendant, Walters, named in this action and alleges

10   that it engaged in unfair, deceptive or unconscionable behavior pursuant to K.R.S. §367.170.

11      43. Named Plaintiffs incorporate each and every factual allegation contained in paras 6-14

12   as if fully rewritten herein.

13      44. Named Plaintiffs, on July 13, 2019, entered into a sales transaction with the Defendant

14   Walters for the purchase of a 2016 Chevrolet Malibu automobile.

15                                    **Count 1**

16      45. A "retail buyers order" was executed between the parties in which the final cash price

17   was listed for the vehicle which ultimately became part of the "amount financed" disclosed in a

18   retail installment sales agreement ["RISC"].

19      46. Preprinted on each retail buyers order was a $799 fee which was described vaguely

20   therein by Walters for "customer services" which figure was eventually transferred onto a Risc and

21   designated by Walters as a "processing fee" which was included in the amount financed

22   [hereinafter the "fee"]. This fee, as described by Walters itself, was assessed in all sales whether for

23   cash or financed.

24      47. This processing fee supposedly covered certain services that Walters allegedly

25   performs in connection with preparing vehicles, both new and used, on behalf of customers such as

26   titling, securing license plates, registration of motor vehicles, etc. These services are worth far less

27

28                                    ˘ 12 ˘

1   than the $799 fee Walters charges and are far in excess of what other auto dealers throughout the

2   Commonwealth charge for the same services. As such they are unconscionable and therefore

3   violate the Kentucky Consumer Protection Act referred to above.

4        48. The fee referenced herein is simply hidden excess profit collected by Walters which it

5   includes in the cash price and upon which it assesses finance charge.

6

7                            CLASS ALLEGATIONS

8        49. This is a class action claim made pursuant to the Kentucky Consumer Protection Act

9   and Rule 23, Fed. R. Civ. P.

10        50. Named Plaintiffs bring this action on behalf of themselves and a class of consumers

11   similarly situated consisting of all persons who:

12        (a) purchased a vehicle from Defendant Walters; and,

13        (b) were charged a fee for "customer services" in the amount of $799.

14        51. The Class is limited to those consumers who purchased a vehicle on or after a date

15   which is two years before the filing of this lawsuit.

16        52. The class represented by Named Plaintiffs in this action, of which they are themselves

17   members, is so numerous that joinder of individual members is impracticable, since Defendants

18   charge such a fee in many vehicle sales.

19        53. The action presents common questions of law and fact under the Kentucky Consumer

20   Protection Act, including but not limited to the unconscionability of the fee in question, that relate

21   to and affect the rights of each member of the class. Also, the relief sought is common to the entire

22   class.

23        54. The claims of Named Plaintiffs are typical of the claims of the class, in that the claims

24   of all members of the class depend on a showing of the same acts and omissions of Defendants

25   which give rise to the rights of the class to the relief sought herein.

26

27

28                                   ˘ 13 ˘

1

2    55. There is no known conflict between either Named Plaintiff and other members of the

3    class with respect to this action, or with respect to the claims for relief herein set forth.

4    56. Named Plaintiffs are representative parties for the class and are able to, and will, fairly

5    and adequately protect the interests of the class.

6    57. The attorney for Named Plaintiffs is experienced and capable in litigation in the field of

7    consumer rights and has successfully represented claimants in similar litigation, including cases

8    that have been concluded with trial and without trial.

9    58. This action is properly maintained as a class action in that the prosecution of separate

10    actions by individual class members would create the risk of individual inconsistent adjudications

11    which would, as a practical matter, be dispositive of the interests of the other members not parties

12    to the adjudication, or would substantially impair or impede their ability to protect their interests.

13    59. The identity of each individual member of the class can be ascertained from the books

14    and records maintained by Defendants, and the appearance of the Named Plaintiffs will fairly

15    ensure the adequate representation of all members of the class and protect their interests.

16    60. Because many of the persons with whom Defendants have dealt, or who were affected

17    by their activities, may not be aware of their rights, or are not in a financial position to assert such

18    rights readily, and because relegation of their claims to individual actions would result in a

19    unreasonable multiplicity of suits and a corresponding burden on this and other courts, a class

20    action is superior to all other methods for a fair and efficient adjudication of this controversy

21

22

23

24

25

26

27

28

1

2                                    Count 2

3      61. Named Plaintiffs hereby incorporate paragraphs 6-14 as if fully rewritten.

4      62. In connection with the transaction Walters sold the Named Plaintiffs GAP which cost

5  was included the cash price of the vehicle and ultimately included in the amount financed.

6      63. GAP is a product which takes effect upon the happening of certain unanticipated and

7  uncontrolled events such as theft, collision and fire caused to a vehicle will cancel any obligation

8  of the debtor on the note at the time of these events. Many consider it a type of insurance but, in the

9  case at bar, it was not technically considered as such because it was not regulated by the Kentucky

10  Department of Insurance.

11      64. The amount charged by Walters for the GAP product was $976. GAP or an equivalent

12  product can be obtained at a fraction of the cost charged by Walters through one's own insurance

13  carrier or agent.

14      65. The amount charged by Walters for the GAP product was excessive and

15  unconscionable.

16

17                               CLASS ALLEGATIONS

18      66. This is a class action claim made pursuant to the Kentucky Consumer Protection Act

19  and Rule 23, Fed. R. Civ. P., against both Defendants named in this action.

20      67. Named Plaintiffs bring this action on behalf of themselves and a class of consumers

21  similarly situated consisting of all persons who (a) purchased a vehicle from Defendant Walters;

22  (b) were charged for GAP Protection in an excessive amount.

23      68. The Class is limited to those consumers who purchased a vehicle on or after a date

24  which is two years before the filing of this lawsuit.

25

26

27

28                                    ˅ 15 ˅

1    69. The class represented by Named Plaintiffs in this action, of which they are

2    themselves members, is so numerous that joinder of individual members is impracticable, since

3    Defendants charge such an amount for this product in many vehicle sales.

4    70. The action presents common questions of law and fact under the Kentucky Consumer

5    Protection Act, including but not limited to the unconscionability of the charge in question, that

6    relate to and affect the rights of each member of the class. Also, the relief sought is common to the

7    entire class.

8    71. The claims of Named Plaintiffs are typical of the claims of the class, in that the claims

9    of all members of the class depend on a showing of the same acts and omissions of Defendants

10    which give rise to the rights of the class to the relief sought herein.

11    72. There is no known conflict between either Named Plaintiff and other members of the

12    class with respect to this action, or with respect to the claims for relief herein set forth.

13    73. Named Plaintiffs are representative parties for the class and are able to, and will, fairly

14    and adequately protect the interests of the class.

15    74. The attorney for Named Plaintiffs is experienced and capable in litigation in the field of

16    consumer rights and has successfully represented claimants in similar litigation, including cases

17    that have been concluded with trial and without trial.

18    75. This action is properly maintained as a class action in that the prosecution of separate

19    actions by individual class members would create the risk of individual inconsistent adjudications

20    which would, as a practical matter, be dispositive of the interests of the other members not parties

21    to the adjudication, or would substantially impair or impede their ability to protect their interests.

22    76. The identity of each individual member of the class can be ascertained from the books

23    and records maintained by Defendants, and the appearance of the Named Plaintiffs will fairly

24    ensure the adequate representation of all members of the class and protect their interests.

25

26

27

28

1

2       77. Because many of the persons with whom Defendants have dealt, or who were affected

3  by their activities, may not be aware of their rights, or are not in a financial position to

4  assert such rights readily, and because relegation of their claims to individual actions would result

5  in a unreasonable multiplicity of suits and a corresponding burden on this and other courts, a class

6  action is superior to all other methods for a fair and efficient adjudication of this controversy

7

8                    **INDIVIDUAL CLAIMS**

9

10                   **CLAIM THREE**
**[THE KENTUCKY CONSUMER PROTECTION ACT]**

11       78**.** This is an individual claim made pursuant to the Ky Consumer Protection Act, K.R.S.

12  §367.110, et seq. [hereinafter referred to as the "Act"].

13       79. This claim is made solely against Defendant Walters, and alleges that it engaged in

14  unfair, deceptive or unconscionable behavior pursuant to K.R.S. §367.170. Defendant CAC is, of

15  course, subject to all claims and defenses which Named Plaintiffs could assert against the seller,

16  Walters.

17

18       80. Plaintiffs incorporate each and every factual allegation contained in paras 6-14 as if

19  fully rewritten herein.

20       81. Plaintiffs, on July 13, 2019, negotiated for the sale and financing of a 2016 Chevrolet

21  Malibu automobile with Defendant Walters.

22

23       82. In connection with the sale David Mounts specifically asked the salesman Josh Harvey

24  about the condition of the vehicle. Harvey responded that the vehicle "runs great" and was a "great

25  car. "The only problem was that the former owner "hit a coyote" which caused some minor front

26  damage which "we fully repaired".

27

28                       ˇ 17 ˇ

83. Based on this and other representations concerning the condition of the vehicle Plaintiffs agreed to purchase the vehicle and entered into a retail installment sales contract which was assigned to CAC.

84. No more than 3 days thereafter, while being driven by Bonnie Mounts, the vehicle lost power and could not be driven above 15 mph. Bonnie pulled over and called her son, David, who came with a friend to assist her in getting the vehicle home. By the time David arrived he was able to restart the vehicle which, at that time, drove normally. However, this incident repeated itself several times over the course of the next week and thereafter Plaintiffs never felt safe enough or confident in driving the vehicle.

85. Furthermore, within a few days of the sale Plaintiffs were also informed by the former owner that the engine had been replaced very early in the life of the vehicle. This fact was not disclosed during the sale and, in fact, was concealed. Plaintiffs only discovered this information when speaking with the former owner. Plaintiffs would not have purchased the vehicle had they been so informed.

86. Plaintiffs agreed to purchase the vehicle "as is". However, Walters failed to attach to the vehicle or to provide Plaintiffs with a buyer's guide as required by law and, as a consequence, is precluded or estopped from claiming and relying on the defense that this was an "as is" sale of the vehicle.

87. As a consequence, Walters' false representations and concealments constituted deceptive, unfair and unconscionable sales practices in violation of the Act.

1

2

3

**CLAM FOUR**
**[THE UNFORM COMMERCIAL CODE]**

4

**88.** This is an individual claim made pursuant to the Ky Uniform Commercial Code

[hereinafter referred to as the "Act" or the "UCC"]].

89. This claim is made solely against Defendant CAC [hereinafter the "secured party"] and

alleges that it violated the Ky Uniform Commercial Code, K.R.S. §355.9-101, et seq. in

connection with its failure to repossess, sell and to disburse the proceeds from the sale of

Plaintiffs' vehicle in a commercially reasonable manner.

90. Plaintiffs incorporate each and every factual allegation contained in paras 6-14 as if

fully rewritten herein.

91. On or about October 16, 2019 CAC repossessed Plaintiffs' vehicle.

92. Under Article 9 of the UCC each and every aspect of the taking, sale and disposition of

the vehicle must be commercially reasonable.

93. Notice sent to each Plaintiff only vaguely referenced the date of sale to be "sometime

after Feb, 2, 2020". The Sale did not take place until February 17, 2020.

94. A Notice of Sale sent to each Plaintiff did not disclose the place of the sale until after

the sale.

95. When finally disclosed only after the sale, the location was in St. Albans, West Va.

which was a 3 hour drive from where Plaintiffs reside.

96. The price realized for the secured property was unreasonably low considering what

Plaintiffs paid for the vehicle only a short time before the sale.

ˇ 19 ˇ

97. The delay between repossession and the date of the sale of the secured property was unreasonably long.

98. The secured property was sold at an unreasonable location.

99. The secured party failed to repair the secured property or otherwise prepare the property for resale so that it could be sold at a reasonable price.

**CLAM FIVE**
**[COMMON LAW BREACH OF PEACE]**

100. This claim is made solely against Defendant CAC [hereinafter the "secured party"] and alleges a claim under common law for breach of peace in connection with its repossession of Plaintiffs' vehicle.

101. Plaintiffs incorporate each and every factual allegation contained in paras 6-14 as if fully rewritten herein.

102. Sometime in October, 2019, unknown to the Plaintiff, CAC retained an entity as its agent for repossession of Plaintiffs vehicle. The agent is currently unidentified and unknown because it appeared at Plaintiffs' residence unannounced and thereafter refused to identify itself stating only it was acting on behalf of CAC.

103. On or about October 13, 2019 CAC's agent trespassed onto real estate belonging to Plaintiffs by crossing over a public roadway and onto and over a bridge located on Plaintiffs' real estate which allowed further access to Plaintiffs' residence and then all the way up to Plaintiffs' driveway where the vehicle was parked directly in front of Plaintiffs' garage where, without notifying Plaintiffs, they began to hook-up Plaintiffs' vehicle to their tow truck. Plaintiff David Mounts upon hearing barking from his dog came out of his residence and demanded to know what

was going on. Upon observing that CAC's agent had begun hooking up his vehicle he demanded that they immediately cease and leave his property or he would call the police. He further explained that his vehicle would be the subject of litigation and its status would be determined in a court of law. The repossession agent then falsely claimed that it had a "Court Order" expressly allowing it to repossess the vehicle.

104. Throughout this incident there was yelling and screaming back and forth between the parties with Plaintiff David Mounts continuing to demand that the repossession agent cease its activity and leave his property and the agent refusing to do so.

105. Finally, and only as a result of the agent's false representation that it had a "Court Order", did Plaintiff David Mounts allow the agent to finish hooking up the vehicle and to drive off with it without providing Plaintiffs any documentation of their authority to do so.

106. The vehicle was repossessed as a direct result of criminal trespass, along with the inherent threat of force and physical violence and by deception, all against the will of Plaintiffs, and therefore constituted a common law breach of peace.

**PRAYER FOR RELIEF**

Plaintiffs pray that this Honorable Court rule as follows:

(a) in claims one and two for a ruling that this matter is appropriate for class treatment and relief;

(b) in claim one for statutory damages of $ 1,000,000,00 or 1% of the net assets of each Defendant;

(c ) in claim one for actual damages in the form of a refund distributed to all eligible class members consisting of all monies collected for GAP for which there was no proper consent for its purchase;

(d) in claim two for actual damages distributed to each eligible class member in counts one and two for any overcharges in an amount deemed fair and reasonable by the Court;

(e) in claim three for actual and punitive damages, for declaratory and equitable relief;

(f) in claim four for statutory damages calculated pursuant to KRS 355.9-625;

(g) in claim five for punitive damages for willful, wanton and malicious misconduct;

(h) for reimbursement of and reasonable attorney fees, costs and expenses in all appropriate claims;

(i) for a trial by jury; and,

(j) for any further relief this Court deems just and proper.

Respectfully submitted

,

*Steven C. Shane*
Steven C. Shane (Ohio Bar #0041124)
Trial Attorney for Plaintiff
P.O. Box 73067
Bellevue, Ky. 41073
(859) 431-7800
(859) 431-3100 facsimile
shanelaw@fuse.net