UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

DAVID MOUNTS, et al.,                )
                                     )
        Plaintiffs,                  )            No. 7:20-CV-46-REW
                                     )
v.                                   )
                                     )            ORDER
BRUCE WALTERS FORD SALES,            )
INC., et al.,                        )
                                     )
        Defendants.

\*\*\*   \*\*\*   \*\*\*   \*\*\*

David and Bonnie Mounts (the Mountses) financed the purchase of a car from Defendant

Bruce Walters Ford Sales, Inc. (Walters) in July 2019. At the time of financing, Walters assigned

the loan to Defendant Credit Acceptance Corporation (Credit Acceptance), and the Mountses

executed documents specific to this assignment. *See* DE 33-1 (Retail Installment Contract; GAP

Waiver Addendum; David Mounts ESign Consent; Bonnie Mounts ESign Consent; Declaration

Acknowledging Electronic Signature Process); DE 33-3 (Retail Buyers Order). Less than one

month later, the Mountses successfully opted out of the Arbitration Provision of the Retail

Installment Sales Contract. DE 33-1 at 29. In October 2019, following alleged default, Credit

Acceptance repossessed the car. DE 29 at ¶ 91.

The Mountses sued Defendants in April 2020, alleging consumer protection violations and

claims related to the repossession. *See* DE 1 (Complaint); DE 29 (Amended Complaint). Pertinent

here, the Mountses included two class action claims. The first class alleges a violation of the Truth

in Lending Act (TILA) and is defined as all persons who entered into a Retail Installment

Transaction with Walters that was subsequently assigned to a third-party, and that included

electronically signed consent to GAP protection (the TILA class). DE 29 at ¶¶ 15–40. The second

1

class alleges violations of the Kentucky Consumer Protection Act and includes two subclasses: 1) anyone who purchased a vehicle from Walters and was charged an excessive Processing Fee (the KCPA Processing Fee class), and 2) anyone who purchased a vehicle from Walters and was charged an excessive amount for GAP protection (the KCPA GAP class). DE 29 at ¶¶ 41–77. The TILA class was limited to transactions taking place after April 2019, *id.* at ¶ 31, and the KCPA classes were limited to transactions taking place after April 2018. *Id.* at ¶¶ 51, 68. The class claims apply only to Walters.

Plaintiffs filed an Amended Complaint in July 2020. DE 22 (Motion); DE 29 (Amended Complaint). Defendants now move pursuant to Rule 12(f) to strike the class allegations from the Amended Complaint. DE 33. The matter is fully briefed and ripe for review. DE 41 (Response); DE 45 (Reply).

### I.   Standard

Initially, the parties disagree on the mechanics of the motion. Defendants filed their joint motion "pursuant to FRCP 12(f), 23(c)(1), and 23(d)(1)(D)[.]" DE 33 at 1. Plaintiffs directly attack the motion by claiming "[n]either [Rule 12(f)] *nor any other provision* of the Federal Rules suggests that a Rule 12(f) motion is a proper means of contesting Rule 23 class allegations." DE 41 at 1 (emphasis added). The instant motion, pursuant to Rule 12(f), is a proper and recognized tool to challenge the Plaintiffs' Amended Complaint—but not to the extent Defendants wish to use it.

Rule 23(c)(1)(A) tells the district court to decide whether to certify a class "[a]t an early practicable time" in the litigation. "[N]othing in the rules says that the court must await a motion by the plaintiffs." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011) (noting that "a defendant may freely move for resolution of the class-certification question

whenever it wishes"). Thus, Defendants "may move to strike class allegations even before a plaintiff has filed a motion for class certification." *Eldridge v. Cabela's Inc.*, No. 3:16-CV-536-DJH, 2017 WL 4364205, at *7–8 (W.D. Ky. Sept. 29, 2017). Against this backdrop, then, a Rule 12(f) motion to strike class allegations is procedurally proper. *Cf. Nevada-Martinez v. Ahmad*, No. 5:15-cv-239-JMH, 2016 WL 7888046, at *3 (E.D. Ky. June 17, 2016) (discussing the context of a motion to strike class allegations and Rule 12(f) as a mechanism to strike immaterial matters "to avoid wasting 'time and money litigating spurious issues'").

The freedom to move the Court to weigh class issues before a post-discovery certification motion does not come without consequence: the movant acting under 12(f) must clear a taller analytical hurdle than the hurdle presented in the post-discovery certification context. Namely, the Court should grant 12(f) relief only if "discovery or for that matter more time would have helped" the parties resolve the challenged portion of the complaint. *Pilgrim*, 660 F.3d at 949. The Court has "the duty of engaging in a 'rigorous analysis' of the [class action] question" when presented with a pre-certification motion. *Id.* (quoting *Gen. Tel. Co. v. Falcon*, 102 S. Ct. 2364, 2372 (1982). This "rigorous analysis" has been described by courts in this Circuit as "the same as that applied in deciding a motion to dismiss under Rule 12 (b)(6)." *Schilling v. Kenton Cty., Ky.*, No. 10-143-DLB, 2011 WL 293759, at*4 (E.D. Ky. Jan. 27, 2011) (citing *Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010)).

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1965. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). Yet, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 106 S. Ct. 2932, 2944 (1986).

In the class certification context, "[t]he moving party has the burden of demonstrating *from the face of the [plaintiff's] complaint* that it will be impossible to certify the class as alleged, regardless of the facts plaintiff[ ] may be able to prove." *Schilling*, 2011 WL 293759, at *4 (citing *Jimenez*, 2010 WL 3623176, at *3) (emphasis added). Therefore, the central question when evaluating a motion to strike class allegations is, from the face of the complaint, "whether the Rule 23 prerequisites are met." *Eldridge*, 2017 WL 4364205, at *8 (citing *Schilling*, 2011 WL 293759, at *4). A complaint's failure to satisfy "even one of the Rule 23 prerequisites" means the class allegations must be stricken. *Id.*

While *review* of a Rule 12(f) motion in this context may mimic the review of a Rule 12(b)(6) motion, a Rule 12(f) motion is not a Rule 12(b)(6) motion. There are situations in which the Court may evaluate a motion under Rule 12 (b)(6) by considering matters outside the subject pleading. *See, e.g., Song v. City of Elyria, Ohio*, 985 F.2d 840, 842 (6th Cir. 1993) (noting that, in the Rule 12(b)(6) context, the Court may consider attachments to the motion so long as the attachment does "not rebut, challenge, or contradict anything in the plaintiffs' complaint"); *see also Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 467 (6th Cir. 2011) (noting that the Court may "consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice" (internal quotation marks and citation omitted)). There is also a mechanism that allows conversion of a Rule 12(b)(6) motion into a Rule 56 motion when

outside of the pleading matters otherwise subject to exclusion are considered. *See* Fed. R. Civ. P. 12(d).

There is no like mechanism for a Rule 12(f) motion.[1] In fact, "affidavits in support of or in opposition to the motion [to strike] typically may not be used." 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1380 (3d ed.); *see also id.* at § 1382 ("It normally is apparent on the face of the pleading whether the challenged matter is objectionable under Rule 12(f). As a result, affidavits are unnecessary in the usual case."). Allowing such a mechanism to be folded into Rule 12(f) would make the Rule redundant. *Cf. Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974–75 (9th Cir. 2010) (noting that using Rule 12(f) to dismiss "some or all of a pleading" would be redundant "because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose"). The Sixth Circuit's interpretation of Rule 12(f) as "a drastic remedy" that "should be sparingly used by the courts" also supports this limitation. *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953) (citations omitted). "This rule is driven by the 'practical difficulty of deciding cases without a [well-developed] factual record[.]'" *Glob. Fleet Sales, LLC v. Delunas*, No. 12-15471, 2014 WL 634075, at *27 (E.D. Mich. Feb. 18, 2014); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceedings."). Defendants repeatedly urge class-claim dismissal, *e.g.*, "from the face of the pleadings." DE 33, at 11; *see also* DE 45 ("deficient on their face"). That is what the Court will assess.

---

[1] Perhaps 12(f) is an odd tool in this context anyway, given its verbiage. The Rule aims at "redundant, immaterial, impertinent, or scandalous matter." This stretches significantly when used to address matters of legal sufficiency, more the merits-based territory of 12(b)(6).

Accordingly, the Court reviews the pleading and the parties' briefing in resolving Defendants' challenges to the pleading. Under the procedural context, Defendants' declaration and affidavit are premature. The Court does not ignore the documents but focuses its attention properly on the pleading and considers only the matters the rules, at this juncture, permit.

## II.    Analysis

Before reaching the criteria in Federal Rule of Civil Procedure 23(a), the Defendants make two threshold arguments: the remedy sought in the TILA class is precluded as a matter of law, DE 33 at 12, and the classes are defined as impermissible "fail-safe" classes. *Id.* at 21–22. The Court turns first to those cusp issues.

First, Defendants argue, specific to the TILA class and separate from the prongs of Rule 23(a), that the remedy of "a refund (i.e. rescission) of the GAP Addendum" is precluded as a matter of law. DE 33 at 12. Defendants cite a First Circuit case holding that rescission or declaratory rescission claims are unavailable for class-action treatment. *See McKenna v. First Horizon Home Loan Corp.*, 475 F.3d 418, 427–28 (1st Cir. 2007). *McKenna*, however, dealt with wholesale rescission of a contract when a TILA violation is alleged; the Mountses seek a "refund . . . consisting of all monies collected for GAP[.]" DE 29 at ¶ d. The Mountses request for a refund of one charge relating to one contract provision is not equivalent to rescission of the contract as *McKenna* envisioned. The Amended Complaint does not, in any of its language, reference rescission as a sought form of relief.

Second, Defendants argue that the TILA class and the KCPA GAP class are impermissibly defined as "fail-safe" classes. A "fail-safe" class is one where the class "shields the putative class members from receiving an adverse judgment." *Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011). "Such a result is prohibited in large part because it would fail to provide

6

the final resolution of the claims of *all* class members that is envisioned in class action litigation."

*Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 538 (6th Cir. 2012). To avoid a fail-safe class,

the class definition should include "both those entitled to relief and those not." *Id.*

In *Randleman*, the Circuit consolidated two separate appeals of a district court's

decertification of class action allegations and analyzed both definitions. *Randleman*, 646 F.3d at

349–51. In the first case, the class was defined as

> [a]ll persons who (i) paid for title insurance issued by defendant Fidelity National
> Title Insurance Company in connection with the refinancing of a residential
> mortgage loan on property located in Ohio that was completed on or after February
> 15, 2000, (ii) were entitled to receive the "reissue" or "refinance" rate for title
> insurance pursuant to Section 8 or Section 9 of the Filed Rates (for transactions
> prior to February 1, 2002) or PR–9 or PR–10 of the Filed Rates (for transactions
> February 1, 2002 to the present), and (iii) paid more than the "reissue" or
> "refinance" rate for such title insurance.

*Id.* at 350. The Circuit noted that the second clause, where the class was narrowed to "only

include[] those who are 'entitled to relief[,]'" transformed the defined class into a fail-safe class.

*Id.* at 352. The other class definition did not include an entitlement clause.

> All persons who (i) paid for a lender's policy of title insurance issued by defendant
> First American Title Insurance Company in connection with the refinancing of a
> residential mortgage loan on property located in Ohio that was completed on or
> after February 2, 2000; (ii) where the subject property previously had been
> mortgaged within the applicable look-back period; and (iii) paid more than the
> discounted "reissue" or "refinance" rate for such title insurance.

*Id.* at 351. While the Circuit was not asked to determine whether the second class definition was

a fail-safe class, it did note that redefining the first class using the second class as a guide was an

available option. *Id.* at 352 n.2.

Here, the challenged classes are impermissible fail-safe classes. The dichotomy between

the class definitions highlights the problem similar to the way the two classes in *Randleman*

differed. The TILA class is defined as

7

all persons who:

(a) Purchased and financed the sale of an auto (new or used) from Defendant
Walters through the use of a retail installment sales contract or through other
instrument of indebtedness;
(b) In connection with each sale purchased GAP coverage;
(c) Where the consent to the purchase of GAP was obtained from the consumer
through the use of an electronic signature process;
(d) **Where the process of obtaining consent to purchase was defective as a
result of the failure to fully disclose all information required for the consent
to use of electronic signature process pursuant to 15 U.S.C. 7001, et seq.**;
(e) Where in each case the cost of GAP was included in the amount financed or in
the cash price of the vehicle and not in the finance charge; and,
(d) Where in each case the transaction was purchased and/or assigned to a third
party creditor or financial institution

DE 29 at 10 (emphasis added). The KCPA Processing Fee class is defined as

all persons who:

(a) purchased a vehicle from Defendant Walters; and,
(b) were charged a fee for "customer services" in the amount of $799.

*Id.* at 13. Finally, the KCPA GAP class is defined as

all persons who (a) purchased a vehicle from Defendant Walters; (b) were charged
for GAP Protection **in an excessive amount**.

*Id.* at 15 (emphasis added).

The inclusion of a clause limiting the TILA class and the KCPA class to those "where the

process of obtaining consent to purchase was defective" and to those who "were charged for GAP

Protection in an excessive amount" respectively means that "*only* those who are *entitled* to relief"

may join. *See Young*, 693 F.3d at 538. By contrast, the KCPA Processing Fee class includes no

such limiting language: some class members who paid $799 may have paid an excessive amount

while others may have not paid an excessive amount. *See id.* ("Defendants' other argument—that

they are not ultimately liable for many of the class members, even if they were incorrectly charged

[taxes]—proves the point.").

The definitional conclusion does not permanently doom Plaintiffs' classes. Class definitions may be amended before certification to remove clauses or terms that make them fail-safe. *See, e.g., Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73–74 (D. Me. 2010) (revising the class definition at the certification stage); *Slapikas v. First American Title Ins. Co.*, 250 F.R.D. 232, 250–51 (W.D. Pa. 2008) (same). Accordingly, the Court will grant Defendants' Rule 12(f) request in part and strike from the class definition the offending, fail-safe terms.

## A.  Federal Rule of Procedure 23(a)

Rule 23(a) sets forth four criteria that Plaintiffs must meet to sue on behalf of a purported class: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Defendants attack the first three criteria. DE 33 at 5–6. First, they allege that the proposed TILA class does not satisfy the numerosity class because 22 people (Defendants' proffered headcount) does not meet a supposed threshold, and even if it did, Plaintiffs are a "class of 1." *Id.* at 5. Second, they allege that the Mountses are atypical of both proposed classes because they have "exercised their right to opt out of arbitration" while none of the other proposed class members have exercised the same right.[2] *Id.*

---

[2] Defendants also argue that the Mountses are atypical of the KCPA GAP subclass because repossession of their vehicle meant that the GAP coverage was largely refunded, while none of the purported class members received any refund on the GAP coverage. DE 33 at 16–17. Plaintiffs' partial refund does not make them atypical: Plaintiffs allege that they and the purported class were charged an excessive amount for GAP coverage. DE 29 at 15. A claim is typical if "it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *May v. Blackhawk Mining, LLC*, 319 F.R.D 233, 238 (E.D. Ky. 2017). Regardless of whether Plaintiffs received a refund of a portion of the GAP coverage, the portion not refunded (and, centrally, the original charge) would still, according to Plaintiffs' Amended Complaint, be excessive or rest on an excessive foundation.

Finally, Defendants allege that the claims of the proposed class are uncommon because the concepts of consent and "excessive" fees are "inherently individualized" inquiries. *Id.* at 6.

### B. **Numerosity**

There is "no strict numerical test" in determining whether the numerosity requirement has been met. *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "When class size reaches substantial proportions . . . the impracticability requirement is usually satisfied *by the numbers alone*." *Id.* (emphasis added). Conversely, when a proposed class does not reach substantial numbers, a fact-based inquiry determines the numerosity requirement. *Cf. Lanning v. Southeastern Pennsylvania Transp. Authority*, 176 F.R.D. 132, 147–48 (E.D. Pa. 1997) (noting that a class of 22 individuals satisfied the numerosity requirement because of case-based difficulties in locating class members).

Defendants submit, by declaration and affidavit, that there are, at most, 22 class members. DE 33-1 at 2. They then argue that 22 class members, alone, "is insufficient to satisfy Rule 23(a) numerosity." DE 33 at 13. Defendants point to nothing in the Amended Complaint that supports this conclusion. The argument and submitted evidence are prematurely before the Court. Discovery will reveal the pertinent information, and the Court will weigh the discovery in the certification context. The Defendants, at this stage, do not establish that it would be "impossible to certify the class as alleged" in the Amended Complaint because of the size of the proposed class. *Schilling*, 2011 WL 293759, at *4 (citing *Jimenez*, 2010 WL 3623176, at *3). The Court will not assess the validity of the allegations on extra-pleading materials, and thus rejects the argument at this point.

## C. The Arbitration Clause

The Rule 23(a) typicality requirement is the recognition that the interests of the representative and the members of the proposed class must be aligned. *In re Am. Med. Sys. Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996). "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). "[W]here there are defenses unique to the individual claims of the class members . . ., the typicality premise is lacking for—under the circumstances—it cannot be said that a class member who proves his own claim would necessarily prove the claims of other class members." *Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009) (citing *Beck v. Maximus, Inc.*, 456 F.3d 291, 296 (3d. Cir. 2006)). Put simply, "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399.

Defendants' flagship argument is the validity and effect of the Arbitration Provision and the Class Action Waiver[3] on the proposed class. According to Defendants, the Mountses' successful exercise of their right to opt out of the Arbitration Clause distinguishes them from other members of the proposed class. *See* DE 33 at 14–17. By contrast, the argument goes, anyone who has not opted out would be "barred from participating in a class action." *Id.* at 14. Defendants attach a declaration from a legal assistant in Credit Acceptance's corporate legal department claiming that the Mountses successfully opted out and "[n]one of the customers in the twenty-one (21) other finance transactions opted out of the Arbitration Clause." DE 33-1 at 2. Because this declaration is not part of the record for analysis under Rule 12(f) motion, Defendants' factual

---

[3] The Class Action Waiver is in the sixth paragraph of the Arbitration Clause. *See* DE 33-1 at 9.

11

arguments are premature; once discovery develops the record fully, the question will be appropriate in the final certification context. The Court evaluates the motion to strike only on the allegations made in the pleading—Defendants' argument hinges completely on consideration of evidentiary and other materials beyond that defined area. Rule 12(f) is not the vehicle.[4]

The Court notes, however, that Defendants' claims on this point savor of merit. The Mountses (individually) may have been able to assert claims in large part because of the alleged waiver of the Arbitration Clause. Waiver of the Arbitration Clause would make the Mountses stand apart from others, if Defendants are correct, because they assert claims "that the overwhelming majority of the purported class members may be barred from bringing in this court." *Quinlan v. Macy's Corporate Services, Inc.*, Case No. CV 12-00737 DDP (JCx), 2013 WL 11091572, at *3 (C.D. Cal. Aug. 22, 2013) (finding a lack of typicality because the class representative was not subject to a "binding arbitration program" while "94.5% of the 84,000 employees" of the purported class members were). The Mountses, by opting out, would "stand[] in a different position legally than many class members." *Renton v. Kaiser Foundation Health Plan, Inc.*, 2001 WL 1218773, at *7 (W.D. Wash. Sept. 24, 2001) (finding the representative atypical because she "was not subject to an arbitration agreement under her plan" while many class members were). If the Mountses waived these provisions, their legal standing may make them atypical of the purported class— essentially they would become a class of one.

The Mountses cite *Bittinger v. Tecumseh Prod. Co.*, 123 F.3d 877 (6th Cir. 1997) to support their claim that these deficiencies are not destructive to the class allegations. In *Bittinger*, the Circuit found that the class representative was at least typical of "some class members" and that

---

[4] Even Rule 12(b)(6) would not go so far, and the Court will not convert the filings into a Rule 56 undertaking at this stage.

an appropriate remedy would be to create "sub-classes." *Id.* at 884. The sub-class problem, however, is a question better suited for the certification stage, when the Court will have access to a developed record and the Mountses can make arguments predicated on complete discovery.

The Mountses also argue that these gatekeeping provisions are legally deficient. DE 41 at 12–14. Plaintiffs conclude that, under the allegedly defective Arbitration Clause, "the rights and liabilities of the parties is [sic] unknown at this time, [which is] another reason why Walters' motion is premature." *Id.* at 14. The class representative must adequately represent the interests of the proposed class. The Sixth Circuit applies a two-part test to determine the adequacy of representation. *See Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976). First, the named representatives "must have common interests with the unnamed members of the class," and second, "it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Id.* There is overlap between the typicality requirement and the adequacy requirement "because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083.

The Mountses, on a proper certification motion with a developed record showing successful waiver opt out, might not have standing to challenge the Arbitration Clause. Standing, as outlined by Article III of the United States Constitution, applies to the analysis of class action lawsuits. *Sutton v. St. Judge Medical S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005). "The class representative must allege an individual, personal injury in order to seek relief on behalf of himself or any other member of the class." *Id.* The "rights and liabilities of the parties" at the current stage are unclear. Plaintiffs, once the proof rightly enters, may have a standing problem because of their situation relative to the Arbitration Clause. *Cf. Zieger v. Advance Am.*, No. CV 13-1614-GMS,

2014 WL 7388365, at *4 (D. Del. Dec. 29, 2014) ("Although similarly situated in some ways with others who may have taken out loans with Advance, Zieger is not concretely affected by the Dispute Resolution clause in particular and therefore lacks standing to challenge it."). Time will tell.

Ultimately, the discussion is academic. The Amended Complaint does not include an allegation stating the Mountses have successfully opted out of the Arbitration Provision or the Class Action Waiver. DE 33 at 15. The post-pleading matters are not the subject of Rule 12(f)'s operation. The Court cannot, "[a]t this early stage . . . rule definitively that [Plaintiffs are] truly a class of one." *See Zieger*, 2014 WL 7388365 at *4.

### D. Commonality

Finally, Defendants argue that the Plaintiffs' claims as to both the TILA and the KCPA classes are uncommon and involve "individualized questions[.]" DE 33 at 17. Defendants point to the "consent" aspects of the TILA class and the "excessive" claims in the KCPA to argue that these concepts require an individualized analysis of each individual in the class. *Id.* at 17–20. Under Rule 23(a)(2), there must be "questions of law or fact common to the class." This function of "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). Essentially, the question focuses on "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

Here, the defective consent claim hinges on a statutory requirement to disclose certain documents. *See* 15 U.S.C. § 7001(c)(1)(B) (noting that "the consumer, prior to consenting, is

14

provided with a clear and conspicuous statement" among other requirements). True, "the nuances of these interactions and Plaintiff's knowledge are unique to Plaintiff[.]" *Smith v. Cash America International, Inc.*, Case No. 1:15-CV-00760-MRB, 2019 WL 2352921, at *6 (S.D. Ohio June 4, 2019). However, a portion of Walters's conduct that is in question in this case is not highly individualized: either their documents comport with the statute or they do not. The dealership's procedures regarding proper disclosure *could* be deficient as a matter of law—but those are questions suited for a post-discovery certification motion.

The same conclusion follows for Defendants' arguments that Plaintiffs' claims of "excessive" fees destroy commonality. Defendants argue that an inquiry into whether GAP or processing fees are excessive would require "an investigation into, and proof of, facts about each contract and the related documents prepared in connection with the transaction; the particular vehicle purchased including its condition and value; the down payment amount; the amount financed; the industry standard for the relevant market and region, etc." DE 33 at 20. However, even from the Defendants' argument, it is evident that discovery could reveal the very practices of underwriting that Walters uses when making GAP and processing fee decisions—processes that may intentionally lead Walters to charging excessive GAP and processing fees. Defendants, at this stage, have not satisfied their burden to establish lack of commonality from the "face of the [plaintiff's] complaint [such] that it will be impossible to certify the class[.]" *Schilling*, 2011 WL 293759, at *4 (citing *Jimenez*, 2010 WL 3623176, at *3).

In sum, Defendants have cleared the analytical hurdle sufficient to grant a portion of the sought relief: the class allegations survive, albeit in a slightly amended form to avoid a fail-safe class. The Court will analyze the certification question, on a complete record, at the appropriate time after discovery. The individual claims remain untouched.

15

**III.    Conclusion**

For the reasons and on the particulars discussed above, the Amended Complaint's class allegations are amended to strike the "fail-safe" definitions. Accordingly, the Court **GRANTS in part and DENIES in part** DE 33.

This the 1st day of March, 2021.

Signed By:

_Robert E. Wier_

**United States District Judge**